# Court of Appeals
## Tenth Appellate District of Texas

### 10-24-00253-CR

Arlie Glenn Gaston,
Appellant

v.

The State of Texas,
Appellee

On appeal from the
13th District Court of Navarro County, Texas
Judge James E. Lagomarsino, presiding
Trial Court Cause No. D41771-CR

JUSTICE HARRIS delivered the opinion of the Court.

## MEMORANDUM OPINION

Arlie Glenn Gaston was convicted of two counts of aggravated robbery and sentenced to 37 years in prison, each count to run concurrently with the other.  Because the evidence was sufficient to support his conviction, the trial court did not abuse its discretion in excluding a witness's testimony regarding Gaston's alleged mental health, and the trial court did not abuse its discretion in admitting three self-authenticating exhibits at punishment, we affirm the

trial court's judgments.

**BACKGROUND**

After retrieving his wife's gun from his brother, to whom he had sold it, Gaston drove around Navarro County until he ended up at the Family Dollar store in Dawson, Texas, at about 9:00 p.m. He wandered around the store for a while and then walked up to the checkout counter, behind which an assistant manager and a cashier stood, and asked what time the store closed. The assistant manager told Gaston the store closed at 10:00 p.m. Gaston responded that he had something in his shoe that would make them close early. He then demanded money from the register. After a regular customer bought items while Gaston was present, the assistant manager communicated to the customer outside that Gaston was trying to rob the store.

As Gaston waited for the store to close, officers from the Navarro County Sherriff's Office arrived. Gaston approached the sliding-door entrance to the store, displayed a firearm, and stood with it at his side. After an approximately 20-minute standoff, Gaston placed the firearm on the ground and surrendered. He later admitted to the robbery.

**SUFFICIENCY OF THE EVIDENCE**

In Gaston's first issue on appeal, he contends the evidence was insufficient to support his conviction because, specifically, the State failed to

prove:  1) Family Dollar's ownership of the property; 2) the two complainants felt threatened; and 3) Gaston "brandished" or used a deadly weapon during the offense.

### *Standard of Review*

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (*citing Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial

evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

Gaston was charged with two counts of aggravated robbery. The essential elements of an aggravated robbery, as modified by the indictment in this case, are: (1) the defendant, (2) in the course of committing theft, (3) with intent to obtain or maintain control of property, (4) knowingly or intentionally, (5) threatened or placed another in fear of imminent bodily injury or death, and (6) used or exhibited a deadly weapon. *See* TEX. PENAL CODE §§ 29.02(a)(2), 29.03(a)(2); *see also Robinson v. State*, 596 S.W.2d 130, 132 (Tex. Crim. App. 1980). "In the course of committing theft" means conduct that occurs in an attempt to commit, during the commission, or in immediate flight

after the attempt or commission of theft. TEX. PEN. CODE § 29.01(1). A person commits theft if he unlawfully appropriates property, meaning without the owner's effective consent, with intent to deprive the owner of property. *Id.* § 31.03(a) & (b).

### *Ownership*

Gaston claims the evidence is insufficient because no one testified as to who was the true owner of the property "supposedly being stolen." In support of his argument, Gaston relies on the Court of Criminal Appeals' opinion in *Byrd v. State*, 336 S.W.3d 242 (Tex. Crim. App. 2011). In *Byrd*, the Court addressed a variance issue in a shoplifting case where the indictment identified the property owner as "Mike Morales." *Id.* at 245. At trial, the State proved that Wal-Mart was the property owner and not "Mike Morales." *Id.* at 253. No one at trial had even heard of Mike Morales or that he had anything to do with Wal-Mart. *Id.* at 254. The Court found a material variance between the indictment and evidence at trial, which amounted to a failure of proof, and concluded that the material variance rendered the evidence insufficient to support the conviction. *Id.* at 258.

This is not a case, as was *Byrd*, where the indictment alleged one owner, and the State proved another. Rather, in this case, the indictment did not allege an owner because such an allegation was not required in an indictment

for aggravated robbery. *Rudd v. State*, 616 S.W.2d 623, 624 (Tex. Crim. App. 1981). Thus, in a hypothetically correct jury charge as authorized by the indictment in this case, a particular owner was not required to be proved, and the holding in *Byrd* is not applicable.

Texas law provides, and the jury was so instructed, that an owner is one who "has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor[.]" *Id.* § 1.07(a)(35)(A); *see also Morgan v. State*, 501 S.W.3d 84, 91 (Tex. Crim. App. 2016). The evidence here showed that Gaston demanded money held in a cash register inside the Family Dollar store in Dawson, Texas.[1] There was no evidence in the record that the money was Gaston's or that he had any right, much less a greater right, to the money. While there was nothing to show Family Dollar had title to the money, the evidence is sufficient to show that Family Dollar possessed the money in the cash register or at least had a greater right to possession of the money than Gaston.

### *Threatened or Placed in Fear*

Next, Gaston contends that there is insufficient evidence to prove that the two complainants, Veronica and Brittney, were threatened or placed in fear

---

[1] Although no money exchanged hands, a theft only has to be attempted, not completed. *Jones v. State*, 323 S.W.3d 885, 890 (Tex. Crim. App. 2010). *See White v. State*, 671 S.W.2d 40, 41-42 (Tex. Crim. App. 1984) ("[n]o completed theft is required in order for the proscribed conduct to constitute the offense of robbery."); *Robinson v. State*, 596 S.W.2d 130, 134 (Tex. Crim. App. 1980).

of imminent bodily injury or death.

The Texas Court of Criminal Appeals has said:

> The plain language of the [robbery] statute encompasses not just explicit threats, but whatever implicit threats may lead to the victim being placed in fear. So long as the defendant's actions are of such nature as in reason and common experience is likely to induce a person to part with his property against his will, any actual or perceived threat of imminent bodily injury will satisfy this element of the offense.

*Howard v. State*, 333 S.W.3d 137, 138 (Tex. Crim. App. 2010). Consequently, an accused need not expressly threaten another or display a weapon to place an individual in fear of imminent bodily injury or death. *See Howard v. State*, 306 S.W.3d 407, 410-11 (Tex. App.—Texarkana 2010), *aff'd,* 333 S.W.3d 137 (Tex. Crim. App. 2011).

In this case, Veronica testified that she was an assistant manager at the Family Dollar store in Dawson when Gaston tried to rob the store. She was working the closing shift. Late in the shift, Gaston approached the counter where she and Brittany, a cashier, were standing. He asked what time the store closed. When Veronica told him that the store closed at 10:00 p.m., Gaston replied, "I got something in my shoe that says you'll close before." At first, Veronica did not pay attention to what Gaston was saying. However, when he repeated it, she decided he was serious. He also demanded money from the cash register drawer. Veronica did not know what he had in his shoe

and never saw a weapon, but what Gaston said to her scared her. She told Gaston that the doors had alarms on them and would go off if she closed early. This was not the truth, but she was trying to stall.

Veronica texted "I need you" to her husband because she was scared and had a heart condition. She tried going outside to get some air, but Gaston followed her. She said he was trying to calm her down. The store surveillance video showed Veronica fanning herself and placing her hand on her heart. She was visibly distressed. It also appeared that Gaston convinced her to come back in the store. Veronica walked back outside to smoke, but Gaston again followed her, walking outside and then standing in the doorway. Veronica returned to the store, walked back to the doorway, and walked back into the store moments later. She frequently paced behind the checkout counter. She walked back outside to smoke again, staying near or in the doorway. Gaston kept an eye on her whenever she went outside, especially when customers stopped to talk to her. Gaston frequently stood in the doorway and returned inside the store, appearing to guard the entry.

Veronica testified that Brittney, who did not testify at Gaston's trial, was also scared. Brittney was only 19 years old and was crying and visibly shaken by what Gaston was trying to do. She placed her hand on her heart as well after Gaston approached the counter. Veronica was afraid to run because she

did not know what Gaston would do and did not want to leave Brittney behind. Eventually, she and Brittney exited the store and stood just outside the doors smoking cigarettes. They were still in Gaston's line of sight. Later, when sheriff's deputies arrived, Veronica and Brittney took the opportunity to leave the store front. Gaston then walked out of the store, stood in the doorway, and displayed a handgun, a revolver, in the palm of his hand, causing a standoff between the deputies and Gaston.

This evidence of Veronica's and Brittney's physical responses to Gaston's actions and what he had said showed they perceived a threat of imminent bodily injury or death. Accordingly, based on a review of the evidence in the light most favorable to the verdict, a rational jury could find that Gaston either threatened or placed Veronica and Brittney in fear of imminent bodily injury or death, and the evidence is sufficient to support this element of aggravated robbery.

### *Deadly Weapon*

Lastly, Gaston contends the evidence is insufficient because there was no evidence that he used or "brandished" a deadly weapon during the robbery.

A person commits aggravated robbery if he commits robbery and uses or exhibits a deadly weapon. TEX. PENAL CODE § 29.03. In this case, the deadly weapon is a firearm. *Id*. § 1.07(17)(a). A person uses or exhibits a deadly

weapon under the aggravated robbery statute if he employs the weapon in any manner that facilitates the associated felony. *Glover v. State*, 710 S.W.3d 816, 822 (Tex. Crim. App. 2025); *McCain v. State*, 22 S.W.3d 497, 502 (Tex. Crim. App. 2000); *Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989). As the Court of Criminal Appeals has said

> … "used . . . a deadly weapon" during the commission of the offense means that the deadly weapon was employed or utilized in order to achieve its purpose. Whereas "exhibited a deadly weapon" means that the weapon was consciously shown or displayed during the commission of the offense. Therefore, the court of appeals was correct when it stated that *"*used . . . during the commission of a felony offense' refers certainly to the wielding of a firearm with effect, but it extends as well to any employment of a deadly weapon, even its simple possession, if such possession facilitates the associated felony." (citation omitted). However, to "exhibit" a deadly weapon it need only be consciously displayed during the commission of the required felony offense. Thus, one can "use" a deadly weapon without exhibiting it, but it is doubtful one can exhibit a deadly weapon during the commission of a felony without using it.

*Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989). Thus, actual "brandishing" of a deadly weapon is not required.

In this case, Gaston, used a firearm—a revolver—even though he did not exhibit it to Veronica or Brittney, to facilitate the commission of the robbery. He approached them as they were behind the checkout counter and stated that he had something in his shoe that would make them close the store early. He repeated his statement. He demanded money. Veronica and Brittney were

scared. Although they did not hand over any money, Gaston remained at or near the counter, keeping an eye on them— especially when Veronica would step outside—and backing away slightly when customers needed to pay for their items. Veronica and Brittney were trapped.

When sheriff's deputies arrived and Veronica and Brittney made their escape from the front of the store, Gaston displayed the revolver to the deputies with arms open wide, but he would not put it down. He would not put his hands in the air. He would not get on his knees. When searching himself for a lighter after retrieving his cigarettes, Gaston put the revolver in his back pocket and went back inside the store to take a lighter from the store. He then stood in the open doorway to light and smoke his cigarette. With the revolver still in his back pocket, he then retrieved a beer from the store and again, stood in the open doorway while he smoked his cigarette and drank the beer. Eventually, he retrieved the revolver from his back pocket, placed it on the ground, and surrendered.

Thus, based on the evidence viewed in the light most favorable to the verdict, a rational jury could find that Gaston used a deadly weapon, and the evidence is sufficient to support this element of aggravated robbery.

Gaston's first issue is overruled.

**EXCLUDED TESTIMONY**

Next, Gaston complains that the trial court erred by prohibiting a defense witness from testifying that Gaston was suffering from a "mental health incident" when Gaston committed the offense.

Because Gaston characterized this witness as an expert, a Rule 702 hearing was held.  *See* TEX. R. EVID. 702.  After the hearing, the trial court prohibited the witness from discussing any mental health determination made by the witness or by anyone with whom the witness spoke.  We review a trial court's decision to admit or exclude expert testimony for an abuse of discretion, and we may not reverse those rulings unless they fall outside the zone of reasonable disagreement.  *Blasdell v. State*, 384 S.W.3d 824, 829 (Tex. Crim. App. 2012).

Pursuant to Texas Rules of Evidence 702 and 705, three requirements must be met before expert testimony can be admitted: "(1) The witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the fact-finder in deciding the case." *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006); *see* TEX. R. EVID. 702; 705; *Wolfe v. State*, 509 S.W.3d 325, 335 (Tex. Crim. App. 2017).  These requirements are commonly referred to as

(1) qualification, (2) reliability, and (3) relevance. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019).

Gaston contends that the witness met all three requirements but focuses on the relevance of the witness's testimony in his appellate brief. The State, on the other hand, focuses primarily on the witness's lack of qualifications with a minor discussion of relevance in its appellate brief. Nevertheless, because it appears that the qualification of the witness to testify as an expert was the focus of the Rule 702 hearing and the trial court's ruling, we begin with that requirement.

The specialized knowledge that qualifies a witness to offer an expert opinion may be obtained from specialized education, practical experience, a study of technical works, or a combination of these things. *Rhomer*, 569 S.W.3d at 669. "A witness must first have a sufficient background in a particular field, but a trial judge must then determine whether that background 'goes to the very matter on which [the witness] is to give an opinion.'" *Rhomer*, 569 S.W.3d at 669, quoting *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006). "Fit" is a component of qualification, and "the expert's background must be tailored to the specific area of expertise in which the expert desires to testify." *Id.*, quoting *Vela*, 209 S.W.3d at 133. The party offering expert testimony has the burden to show the witness is qualified on the matter in question. *Rhomer*,

569 S.W.3d at 669.

To determine whether a trial court has abused its discretion in ruling on an expert's qualifications, an appellate court may consider: (1) the complexity of the field of expertise; (2) how conclusive the expert's opinion is; and (3) how central the area of expertise is to the resolution of the lawsuit. *Rhomer*, 569 S.W.3d at 669. Greater qualifications are required for more complex fields of expertise and for more conclusive and dispositive opinions. *Id.*

At the Rule 702 hearing, the witness testified it was his intent to offer an opinion that Gaston was mentally ill when he committed his crime. The witness clarified he wanted to opine that Gaston was suffering from symptoms of mental illness.[2] His only qualifications for making those statements was that the witness had been a police officer for 22 years, had dealt with mentally ill individuals, and had attended a week-long class which certified him to become a "Mental Health Officer."

Mental health is a complex field; and in the criminal trial context:

…psychiatrists gather facts, through professional examination, interviews, and elsewhere, that they will share with the judge or jury; they analyze the information gathered and from it draw plausible conclusions about the defendant's mental condition, and about the effects of any disorder on behavior; and they offer opinions about how the defendant's mental condition might have affected his behavior at the time in question. They know the

---

[2] That the witness later said he was only identifying "indicators" and not making a diagnosis or identifying symptoms, is of no consequence. A symptom is defined as something that "indicates" the existence of something else. *See* https://www.merriam-webster.com/dictionary/symptom.

probative questions to ask of the opposing party's psychiatrists and how to interpret their answers. *Unlike lay witnesses, who can merely describe symptoms they believe might be relevant to the defendant's mental state, psychiatrists can identify the "elusive and often deceptive" symptoms of insanity, (citation omitted), and tell the jury why their observations are relevant….* Through this process of investigation, interpretation, and testimony, psychiatrists ideally assist lay jurors, who generally have no training in psychiatric matters, to make a sensible and educated determination about the mental condition of the defendant at the time of the offense.

*Ake v. Oklahoma*, 470 U.S. 68, 80-81, 105 S. Ct. 1087, 1095 (1985) (emphasis added). In this case, Gaston wanted the witness to give the jury a "non-criminal explanation as to why" Gaston committed the offense and the "passive" manner in which he did it. In other words, Gaston wanted to give the jury a way to say he did not have the intent to commit the crime. Without Gaston having requested an insanity defense, the ability to present this kind of "expert" evidence to a jury would be central to the resolution of the case.

Because of the field in which the witness was attempting to testify and because the ramifications the type of testimony the witness might provide, the trial court could have determined the witness needed greater qualifications than he had to testify as to the symptoms or indicators of an alleged mental illness in Gaston. Accordingly, the trial court did not abuse its discretion in excluding the witness's testimony as an expert.

Gaston's second issue is overruled.

**SELF-AUTHENTICATED EVIDENCE**

In his last issue, Gaston argues the trial court erred during the punishment phase of his trial by admitting State's Exhibits 46 through 48 which appear to be newspaper articles of an extraneous offense—an escape from the Henderson County Jail after being arrested for murder.

A trial court has broad discretion in determining the admissibility of evidence presented during the punishment phase of trial and may admit evidence deemed relevant to sentencing, including evidence of other crimes or bad acts. TEX. CODE CRIM. PROC. art. 37.07, sec. 3(a)(1); *Schultze v. State*, 177 S.W.3d 26, 40 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). Thus, we review the trial court's decision to admit the complained of evidence under an abuse of discretion standard. *See State v. Heath*, 696 S.W.3d 677, 688 (Tex. Crim. App. 2024); *see also Fowler v. State*, 544 S.W.3d 844, 848 (Tex. Crim. App. 2018) (decision regarding authentication). A trial court abuses its discretion if its decision lies outside of the zone of reasonable disagreement. *Heath*, 696 S.W.3d at 688-87.

At punishment, the State sought to introduce three items that appeared to be newspaper articles covering the story of Gaston's escape in 1989 from the Henderson County Jail after he had been arrested for murder. Gaston

objected, arguing the articles were not properly authenticated. The trial court overruled the objection without explanation.

Rules 901 and 902 of the Texas Rules of Evidence govern how a proponent may authenticate or identify evidence. TEX. R. EVID. 901, 902. While Rule 901 requires the proponent to "produce evidence sufficient to support a finding that the item is what the proponent claims it is" and provides a non-exclusive list of examples of such evidence, Rule 902 provides an *exclusive* list of certain items that are "self-authenticating" which "require no extrinsic evidence of authenticity in order to be admitted." *Id.* For example, "[p]rinted material purporting to be a newspaper or periodical" are self-authenticating. TEX. R. EVID. 902(6). Thus, under Rule 902, such documents are automatically authenticated. *Fleming v. Wilson*, 610 S.W.3d 18, 20 (Tex. 2020).

On appeal, Gaston complains that it was not possible to determine the exhibits were "clips" from a newspaper or periodical; thus, the trial court abused its discretion in admitting them. But the exhibits looked like, and the trial court had the discretion to conclude they were, copies of newspaper articles. As such, the exhibits were self-authenticating, and no other identifying information needed to be provided.

Thus, the trial court did not abuse its discretion by admitting State's Exhibits 46 through 48, and Gaston's third issue is overruled.

**CONCLUSION**

Having overruled each issue on appeal, we affirm the trial court's judgments.

_____
LEE HARRIS
Justice

OPINION DELIVERED and FILED:  September 25, 2025

Before Chief Justice Johnson,
      Justice Smith, and
      Justice Harris
Affirmed
Do not publish
CRPM

